**Affirmed and Opinion filed August 18, 2020.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-19-00302-CV**

---

**COVENANT CLEARINGHOUSE, LLC, Appellant**

**V.**

**KUSH AND KRISHNA, LLC, Appellee**

---

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2017-83237**

---

## O P I N I O N

This appeal involves private transfer fees associated with conveyances of real property. One example of a private transfer fee obligation is a subdivision deed restriction that a developer places on all property in the subdivision, obligating a transfer fee payable to the developer on each future conveyance of the property.[1] In 2011, the legislature enacted laws prohibiting the use of private transfer fees after

---

[1] *See* Tex. Att'y Gen. Op. KP-0195 (2018).

June 17, 2011. *See* Tex. Prop. Code § 5.202(a). Private transfer fee obligations created before that date, however, are subject to strict notice requirements to remain enforceable.

Appellant Covenant Clearinghouse LLC ("CCH")—which claims the right to receive a private transfer fee arising from a pre-2011 obligation—did not comply with statutory notice requirements, and the dispositive question of first impression in this appeal is whether it was required to do so. For the reasons explained below, we conclude that CCH was required to comply. Because it did not comply, the trial court did not err in granting summary judgment in appellee's favor, and we affirm the judgment.

## Background

### A.    Private Transfer Fees Generally

In 2011, the legislature addressed the practice of using private transfer fees in real estate transactions by amending the Property Code to add chapter 5, subchapter G, entitled "Certain Private Transfer Fees Prohibited; Preservation of Private Real Property Rights."[2]  A "private transfer fee" is defined as "an amount of money, regardless of the method of determining the amount, that is payable on the transfer of an interest in real property or payable for a right to make or accept a transfer." Tex. Prop. Code § 5.201(4).  A "private transfer fee obligation" can be created by any number of instruments, including as here a declaration requiring payment of a private transfer fee that is recorded in the real property records in the county in which the property is located. *See id.* § 5.201(5)(A).

---

[2] *See* Act of May 21, 2011, 82d Leg., R.S., ch. 211, § 1, 2011 Tex. Gen. Laws 780, 780-84 (currently codified at Tex. Prop. Code §§ 5.201-.207).

Subject to exceptions not relevant here, a private transfer fee obligation created on or after June 17, 2011 is void and unenforceable against a subsequent owner or subsequent purchaser of real property. *Id*. § 5.202(a). Any private transfer fee obligation created before that date, however, is subject to rather austere notice requirements. First, a person who "receives" a private transfer fee under a private transfer fee obligation created before June 17, 2011 must, on or before January 31, 2012, file a "Notice of Private Transfer Fee Obligation" in the real property records of each county in which the property is located. *See id*. § 5.203(a). The notice must include the content and be in the form prescribed by the statute. *Id*. § 5.203(c). Second, any person who is required to file the initial notice by January 31, 2012 must also refile the notice every three years thereafter. *See id*. § 5.203(d) (stating a person required to file a notice under this section shall refile the notice described by this section within a thirty-day window preceding the third anniversary of the original filing date, and "within a similar 30-day period every third year thereafter").

The consequences of failing to comply with the notice requirements are clear and inflexible. "If a person required to file a notice under this section fails to comply with this section: (1) payment of the private transfer fee may not be a requirement for the conveyance of an interest in the property to a purchaser; (2) the property is not subject to further obligation under the private transfer fee obligation; and (3) the private transfer fee obligation is void." *See id*. § 5.203(f).

## B.    The Private Transfer Fee Obligation at Issue

In September 2009, I-45 Thirty, a Texas general partnership, recorded in the Harris County real property records a "Declaration of Covenant" pertaining to real property then owned by I-45 Thirty and described in the Declaration. The Declaration became binding on the property at filing and does not expire until December 31, 2110. The Declaration contains a private transfer fee provision, which

3

imposes an obligation to pay a private transfer fee equal to one percent of the total purchase price of the property upon the closing of a sale. Section 5 states specifically:

> AMOUNT DUE, Except as otherwise provided herein, contemporaneous with, and as an encumbrance in connection with a Conveyance, the Grantor shall pay to Trustee, as trustee for Beneficiaries, a fee (the "Reconveyance Fee") equal to one percent (1%) of the Consideration (as defined in section 1(c)) paid by or on behalf of the Grantee in connection with the Conveyance.

Additionally, in accordance with section 5, the Declaration instructs any closing agent to, for non-exempt sales made before December 31, 2110, collect from the grantor one percent of the consideration paid by the grantee, retain the closing agent fee, and remit the balance to a designated trustee.

## C. The Present Dispute

In December 2009, Kush and Krishna LLC ("Kush") purchased the property from I-45 Thirty. Kush was aware of the private transfer fee obligation when it purchased the property; however, because Kush's acquisition was the property's initial sale, the transfer was exempted from the private transfer fee obligation pursuant to the Declaration's terms.

The Declaration appointed "Rjon Robins, Esq." as "trustee" for the "beneficiaries" of the private transfer fee. For additional information, including "any successor trustee," the Declaration directs readers to CCH's website. The Declaration lists seven beneficiaries, in each of whom is vested varying percentages of "all rights, interest, ownership and privileges in" the private transfer fee. Notably, I-45 Thirty holds a 54% interest in the private transfer fee created by this Declaration. On January 6, 2012, CCH filed in the Harris County real property records a "Notice of Private Transfer Fee Obligation," which designated itself as the

4

"payee of record" entitled to accept payment on behalf of all payees under numerous instruments, including the Declaration at issue. However, it is undisputed that neither CCH nor anyone else refiled a "Notice of Private Transfer Fee Obligation" pertaining to the Declaration any time after January 2012.

In February 2017, Kush sold the property. Apparently aware that no party had refiled a notice of private transfer fee obligation relating to the property by January 2015, Kush did not pay the private transfer fee at the time of sale but placed into an escrow account an amount that would be due as the fee ($36,000) were it payable. Kush then filed the present declaratory-judgment action, seeking declarations that the private transfer fee obligation in the Declaration is void for failure to comply with section 5.203's notice provisions and that Kush did not owe a private transfer fee. It also sought an order instructing the escrow agent to disperse the escrowed funds to Kush.[3]

Kush filed a traditional motion for partial summary judgment on its declaratory-judgment claim. CCH filed a cross-motion for summary judgment urging, as relevant to this appeal, that it was not required to file a "Notice of Private Transfer Fee Obligation" either in January 2012 or later because it has never "received" a private transfer fee with respect to the property. *See* Tex. Prop. Code § 5.203(a). In its cross-motion, CCH asked the court to award it the $36,000 in interpleaded funds.

After a hearing, the trial court granted Kush's motion for partial summary judgment and declared that CCH was not entitled to recover the interpleaded funds. The court later signed a final judgment ordering the funds released to Kush and

---

[3] The escrow agent interpleaded the escrowed funds into the court's registry.

awarding it trial and conditional appellate attorney's fees.  CCH filed a motion for new trial, which the court denied.  CCH now appeals.

### Analysis

CCH challenges the summary judgment in Kush's favor.  CCH states that the duty to file, and refile, a Notice of Private Transfer Fee Obligation under section 5.203(a) applies only to a person "who receives a private transfer fee."  Because to date CCH has never "received" such a fee related to the property, CCH asserts that the notice provisions do not apply to it.

### A.    Standard of Review

We review a trial court's ruling on a motion for summary judgment de novo. *Tarr v. Timberwood Park Owners Assoc., Inc.*, 556 S.W.3d 274, 278 (Tex. 2018); *Texan Land & Cattle II, Ltd. v. ExxonMobil Pipeline Co.*, 579 S.W.3d 540, 542 (Tex. App.—Houston [14th Dist.] 2019, no pet.).  To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c).  When both parties move for summary judgment on the same issue and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides, determine all questions presented, and, if we determine that the trial court erred, render the judgment the trial court should have rendered.  *Tarr*, 556 S.W.3d at 278; *see also Wausau Underwriters Ins. Co. v. Wedel*, 557 S.W.3d 554, 557 (Tex. 2018) ("A declaratory judgment granted on a traditional motion for summary judgment is reviewed de novo.").

We likewise review issues of statutory construction de novo.  *See Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017).  In construing statutes, our primary objective is to give effect to the

legislature's intent. *See id.* The words the legislature chooses are the surest guide to its intent. *See Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010). Thus, we construe the text according to its plain and common meaning unless a contrary intention is apparent from the context or the construction leads to an absurd result. *See Cadena Comercial*, 518 S.W.3d at 325.

The statute at issue is in the Property Code, which adopts the conventions of statutory construction provided in the Code Construction Act, except as otherwise expressly provided. *See* Tex. Prop. Code § 1.002 ("The Code Construction Act (Chapter 311, Government Code) applies to the construction of each provision in this Code, except as otherwise expressly provided by this code.").[4]

## B. Application

"A person who receives a private transfer fee" under a private transfer fee obligation created before June 17, 2011 must (1) file a Notice of Private Transfer Fee Obligation in the real property records of each county in which the property is located, and (2) refile the same notice "not earlier than the 30th day before the third anniversary of the original filing date described by Subsection (a) and within a similar 30-day period every third year thereafter[.]" *Id.* § 5.203(a), (d). According to CCH, a person who "receives" a private transfer fee includes only those who have received the fee by physical possession and excludes those with a right to receive the fee in connection with a future conveyance of the property. Thus, the question

---

[4] Courts commonly turn to the Code Construction Act when construing Property Code provisions. *See, e.g.*, *Alanis v. Wells Fargo Bank Nat'l Assoc.*, No. 04-19-00461-CV, –S.W.3d–, 2020 WL 3260093, at *4 (Tex. App.—San Antonio June 17, 2020, no pet. h.); *Khyber Holdings, LLC v. BAC Home Loans Servicing, LP*, 349 S.W.3d 178, 180 (Tex. App.—Dallas 2011, no pet.); *Univ. Woods Apartments, Inc. v. McDill Columbus Corp.*, No. 01-92-00779-CV, 1996 WL 38986, at *4 (Tex. App.—Houston [1st Dist.] Jan. 29, 1996, no writ) (not designated for publication); *Cohen v. State*, 858 S.W.2d 51, 52 (Tex. App.—Houston [14th Dist.] 1993, writ denied).

can be reduced to whether the present tense of the word "receives" also includes the future tense.

The answer is readily apparent in the Code Construction Act, which provides that "[w]ords in the present tense include the future tense."  Tex. Gov't Code § 311.012(a).  Courts often cite section 311.012(a) when construing verb tenses in statutes.  *See, e.g.*, *Tex. Cent. R.R. & Infrastructure, Inc. v. Miles*, No. 13-19-00297-CV, 2020 WL 2213962, at *3-4 (Tex. App.—Corpus Christi May 7, 2020, pet. filed) (mem. op.) (applying section 311.012(a) to determine that phrase "legal entity operating a railroad" in Tex. Transp. Code § 81.002(2) includes both present and future railroad operators); *In re Nabors*, 276 S.W.3d 190, 197 n.8 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding).  "Consistent with the legislature's instruction under the Code Construction Act, we should not focus on verb tense in determining legislative intent because words in the present tense include the future tense."  *In re Nabors*, 276 S.W.3d at 197 n.8.  We must also assume that the legislature intended that each statute be interpreted in accordance with the Code Construction Act.  *See id.*  CCH's interpretation would have this court ignore the legislature's instruction by limiting the word "receives" to solely the present tense when both present and future situations are contemplated.  *See Cadena Comercial*, 518 S.W.3d at 330 (applying section 311.012(a) to interpret present tense verbs in Texas Alcoholic Beverage Code).

"Receive" means "to be given, presented with, or paid (something)." *Receive*, Oxford English Dictionary online, *available at* https://www.Lexico.com/en/definition/receive (last visited Aug. 10, 2020). Applying the verb's present and future tenses, we construe the phrase "a person who receives" to mean someone who is being, or may be, given, presented with, or paid something.  So construed, section 5.203(a)'s phrase "a person who receives a private

transfer fee under a private transfer fee obligation" includes a person who is receiving, may receive, or may claim a right to receive a private transfer fee in the future under a private transfer fee obligation covered by the statute. Our construction of section 5.203(a) is consistent with the Declaration itself, which imposes an obligation to pay the fee on grantors of the property in all future conveyances until December 31, 2110.

Based on a proper reading of section 5.203(a), we hold that CCH falls into the class of persons required to file a Notice of Private Transfer Fee Obligation by January 31, 2012 because it is a person who receives, may receive, or may claim a right to receive a private transfer fee arising from a future conveyance of the property. In fact, CCH filed such a notice on January 6, 2012, in which CCH declared itself "the duly appointed designated payee of record authorized to accept payment for, and to act on behalf of, all payees. . . ." *See* Tex. Prop. Code § 5.203(b) ("Multiple payees of a single private transfer fee under a private transfer fee obligation must designate one payee as the payee of record for the fee."). CCH's notice referenced the expiration date listed in the Declaration, specifically cited section 5.203, and designated CCH as authorized to accept payments of the private transfer fee "due in connection with each non-exempt conveyance of the Property."

Under section 5.203(d), any person required to file the initial notice by January 31, 2012 "shall" also "(1) refile the notice described by this section not earlier than the 30th day before the third anniversary of the original filing date described by Subsection (a) and within a similar 30-day period every third year thereafter." *Id.* § 5.203(d)(1). Because CCH is a person required to file the initial notice under section 5.203(a), it was required to refile a similar notice by January 6, 2015, at the latest. Our record indicates and it is undisputed that it did not do so. Accordingly, Kush was not required to pay the private transfer fee to CCH in

9

connection with its 2017 conveyance of the property, and it is entitled to recover the interpleaded funds, as the trial court ruled. *See id*. § 5.203(f).

CCH argues further that interpreting the word "receives" to include both present and future tenses equates the term with the legislature's definition of "payee," also included in subchapter G. *See id.* § 5.201(3). "Payee" is defined as, "a person who claims the right to receive or collect a private transfer fee payable under a private transfer fee obligation and who may or may not have a pecuniary interest in the obligation." *Id.* "Collect" means "to bring or gather together (things, typically when scattered or widespread)" or to "call for and take away; fetch," including to "go somewhere and accept or receive (something), especially as a right or due." *Collect*, Oxford English Dictionary online, *available at* https://www.Lexico.com/en/definition/collect (last visited Aug. 10, 2020). The term "payee" encompasses not only those who claim a right to *receive*, but also those who have or claim a right to *collect* a private transfer fee. Thus, the term "payee" is broader than the phrase "person who receives," even construing the word "receives" to include both the present and future tenses.

It is true, as CCH observes, that the legislature's use of the phrase "person *who claims the right* to receive . . ." in defining "payee" is forward-looking in nature, whereas the legislature did not use precisely the same language in section 5.203(a) ("a person who *receives* . . ."). This distinction is immaterial, as explained, due to the legislature's presumptive intent to include the future tense in all words stated in the present tense. In any event, CCH declared itself the "payee" authorized to receive the private transfer fees throughout the Declaration's term. In doing so, CCH was on notice of the definition of "payee" because it cited section 5.203 in its January 6, 2012 Notice of Private Transfer Fee Obligation. CCH therefore indicated that it

was someone who "claims the right" to receive or collect a private transfer fee in the future under a private transfer fee obligation.

## Conclusion

For the reasons stated, the trial court did not err in granting summary judgment in Kush's favor. We overrule CCH's issue and affirm the trial court's judgment.


/s/    Kevin Jewell
        Justice


Panel consists of Justices Christopher, Jewell, and Hassan.